The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner. The appealing party has shown good ground to reconsider the evidence. Upon reconsideration of the evidence, the Full Commission REVERSES the decision of the Deputy Commissioner and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement dated 22 January 1999 as:
 STIPULATIONS
1. The parties are properly before the North Carolina Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter of this action.
2. The parties to this action have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. In May 1998 defendant-employer employed more than three employees, and defendant-employer and its employees therefore were bound by and subject to the provisions of the North Carolina Workers Compensation Act.
4. In May 1998 an employment relationship existed between plaintiff and defendant-employer.
5. In May 1998 defendant-employer was insured for workers compensation purposes by CNA Insurance Company.
6. In May 1998 plaintiffs average weekly wage was $325.00, which yields a compensation rate of $216.68.
7. Plaintiff was out of work from 10 May 1998 through the date of the hearing before the Deputy Commissioner and continuing. Plaintiff was terminated by defendant-employer on 17 November 1998 upon the expiration of her twenty-six weeks of personal leave time.
8. Plaintiff was released to return to work by her doctor on 10 December 1998.
9. Defendants have denied plaintiffs claim. As a consequence, plaintiff has been paid neither temporary total nor temporary partial disability benefits as a result of her May 1998 injury by accident.
10. Eight pages of stipulated medical records and a one page document entitled "Accident Detail Information were received by the Deputy Commissioner and made a part of the record in this matter on 1 April 1999. On 25 October 1999 one hundred twenty pages of stipulated medical and Industrial Commission records were received by the Deputy Commissioner and made a part of the record in this matter.
***********
 EVIDENTIARY RULINGS
The ruling by the Deputy Commissioner to strike the deposition answer of Dr. Miller to plaintiffs counsels posed hypothetical is hereby reversed. In asking the question, plaintiffs counsel told Dr. Miller to assume that plaintiff "felt a catch in her neck when lifting a box, when plaintiff actually testified at the hearing that she felt a pull in her shoulder when she pulled and lifted the box. Dr. Millers answer was stricken on grounds that the hypothetical assumed facts not in evidence. While the question asked by counsel did contain a statement of fact which was not supported by the evidence, Dr. Miller did not answer the question as posed. Rather, he ignored the actual question and instead responded by relating his opinion "as far as preexisting conditions in regards to Ms. Ruffins neck. Because Dr. Miller did not rely on the misstatement by plaintiffs counsel in his response, the error was harmless. Therefore, Dr. Millers independent statement regarding the causal connection between plaintiffs condition and her injury resulting from a specific traumatic incident was improperly stricken from the record.
***********
Based upon the greater weight of the competent and credible evidence of record in this matter, the Full Commission rejects the findings of fact found by the Deputy Commissioner, and enters the following:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was forty-five years old and residing in Rocky Mount. Plaintiff went through the tenth grade, and subsequently got a GED. As of the date of the hearing in the matter, plaintiff was not employed in any capacity.
2. On 4 April 1997 plaintiff was hired by defendant-employer as a vendor to service vending machines for a particular route in Rocky Mount. This job required plaintiff to load and unload trucks, take merchandise off trucks onto hand carts, remove money from the vending machines, and stock the vending machines.
3. Plaintiff generally worked five days a week at regular hours of nine to ten hours, and two to three hours on Saturdays. Plaintiff had eight stops on her route. However, approximately three weeks prior to her alleged injury by accident in May 1998, plaintiff was given additional stops. Plaintiffs route had increased to include approximately seven additional daily stops, making her work more strenuous and requiring that she work longer hours.
4. On Saturday 9 May 1998, plaintiff arrived at a plant in Goldrock, North Carolina, to service its vending machines. Plaintiff first went into the plant to see what items the machines needed. Plaintiff then returned to her truck and began removing items from the truck to place onto the hand cart. Plaintiff pulled a forty-pound box of syrup which contained four gallons of syrup towards her as she stood on the ground, and then she lifted the box to remove it from the truck. Upon doing so, plaintiff felt a "pull or a cramp in her left shoulder blade. Plaintiff was able to finish her route.
5. The following day plaintiffs left arm and fingers on her left hand were numb, and she noticed an aching pain in her left shoulder blade that traveled down her arm and into her fingers. Later that day plaintiff reported to the emergency room at Nash Health Care Systems with complaints of "pain in the left side of her upper back for the past three days. Upon examination, the physician noted tenderness to palpation over plaintiffs left shoulder, no "bone tenderness in her cervical or thoracic spine, and no "dis[c] signs in her cervical, thoracic, or lumbosacral spine, and his diagnostic impression was muscle spasm in the left trapezius.
6. Plaintiff returned to the emergency room the next two days, May 11 and 12, 1998, with complaints of left shoulder pain. On 13 May 1998 plaintiff was seen by Dr. dEmpaire at Carolina Regional Orthopaedics. Dr. dEmpaire noted pain in plaintiffs scapula and subacromial area of her left shoulder, and gave plaintiff an injection in the subacromial area of her left shoulder. Dr. dEmpaire also assigned work restrictions.
7. Plaintiff returned to Carolina Regional Orthopaedics on 18 May 1998. This time she was seen by Dr. Whitmer, who recommended a cervical MRI because plaintiffs shoulder and arm symptoms had not improved. The MRI was done the following day, the results of which revealed multiple cervical disc herniations.
8. Plaintiff was next seen by Dr. Miller, who is the spine specialist at Carolina Regional Orthopaedics. Dr. Miller reviewed plaintiffs x-rays and MRI, which revealed preexisting problems, including at C5-6 instability and kyphosis, an unusual reverse curvature of the spine. The kyphosis had been present for some time. In addition, there were disc herniations to the left side at C5-6 and at C6-7, both of which could have pre-existed the incident that occurred on 9 May 1998. It is Dr. Millers opinion that the probability that the disc herniations occurred "at the time of the injury is low, but that the 9 May 1998 incident aggravated her pre-existing condition. The aggravation of the herniated disks resulted in nerve impingement which caused plaintiffs neck and left shoulder and arm pain.
9. On 17 August 1998 Dr. Miller performed a two-level anterior cervical fusion, during which the nerves in the back of the neck were "freed up by "appropriate dissection. The surgery was successful, and in subsequent examinations plaintiff was not having any significant arm or neck pain. Plaintiffs left hand numbness continued for some period of time; however, Dr. Miller testified that it was not unusual for pain relief to occur rather quickly, while sensory deficits took much longer to resolve.
10. Dr. Miller kept plaintiff out of work from the date he first examined plaintiff on 21 May 1998 until 10 December 1998, at which time he released her to return to work with restrictions against repeated lifting of more than forty pounds. Dr. Miller assigned a 25% permanent partial impairment rating to plaintiffs cervical spine.
11. Dr. Miller saw plaintiff on two occasions after he released her, on 25 February 1999 and again on 18 March 1999. On 25 February 1999, Dr. Miller noted that plaintiff reported that her neck and upper extremities were doing well, but that she was experiencing a catching in her left shoulder with movement. That problem continued through the 18 March examination. Dr. Miller believes that the condition is "a mechanical problem related to the interface between the rib cage and the shoulder blade. He did not relate this condition to plaintiffs compensable injury or the resulting surgery. Dr. Miller testified that further surgery for her shoulder was not called for, but has continued treating the condition with cortisone injections, anti-inflammatory medicines, and physical therapy.
12. On 9 May 1998, plaintiff suffered an injury resulting from a specific traumatic incident which arose out of and in the course of her employment with defendant-employer, and which aggravated a pre-existing condition of her cervical spine.
13. Plaintiff was terminated from her employment with defendant-employer in November 1998 due to absences from work for more than 26 weeks.
14. Plaintiff is physically capable of returning to work, albeit with restrictions. Plaintiff has applied for jobs at three locations, but claims she is restricted to lifting only fifteen pounds which is contrary to the forty pound lifting restriction given by her treating physician. Plaintiff has the burden of proving continuing total disability at the end of her healing period. Given plaintiffs high school education and physical condition, and considering her forty pound lifting restriction, the Full Commission finds that plaintiff retains some earning capacity and that she has not made reasonable efforts to find suitable employment after reaching maximum medical improvement.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On 9 May 1998, plaintiff suffered a compensable injury in the form of the aggravation of a pre-existing condition as a direct result of a specific traumatic incident arising out of and in the course of her employment with defendant-employer; therefore, she is entitled to compensation under the Act. N.C. Gen. Stat. 97-2(6).
2. Plaintiff was totally disabled as a result of her compensable injury from 9 May 1998 through 10 December 1998. Accordingly, plaintiff is eligible to receive temporary total disability compensation in the amount of $216.68 per week for that period of time. N.C. Gen. Stat. 97-29.
3. The surgery required by plaintiffs compensable injury resulted in a permanent partial disability rating of 25% to plaintiffs cervical spine. Therefore, she is entitled to 75 weeks of compensation at $216.68 per week. N.C. Gen. Stat. 97-31(23).
4. Plaintiff is entitled to payment by defendants for any past and future medical treatment reasonably necessary to effect a cure or provide relief from plaintiffs compensable injury. N.C. Gen. Stat.97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff weekly compensation of $216.68 from 9 May 1998 through 10 December 1998 in a lump sum, subject to the attorneys fees awarded below.
2. Defendants shall pay plaintiff a lump sum of $16,251 in compensation for a 25% permanent partial disability to her cervical spine, subject to the attorneys fees awarded below.
3. Defendants shall pay plaintiff for all past and future medical treatment reasonably necessary to effect a cure or provide relief from plaintiffs compensable injury.
4. Plaintiffs counsel is entitled to a reasonable attorneys fee of 25% of the lump sum payments awarded in paragraphs 1 and 2 above. Payment of this amount shall be made directly to plaintiffs counsel.
5. Defendants shall bear the costs of this action.
This the ___ day of July, 2000.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER